**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JERRY PEACOCK, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| | |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| DUTCH BROS INC., JONATHAN RICCI, and CHARLES L. JEMLEY, | |
| Defendants. | <u>JURY TRIAL DEMANDED</u> |

Plaintiff Jerry Peacock ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Dutch Bros, Inc. ("Dutch Bros" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Dutch Bros; and (c) review of other publicly available information concerning Dutch Bros.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Dutch Bros securities between March 1, 2022, and May 11, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Dutch Bros operates and franchises drive-thru coffee shops. The Company also sells and distributes coffee and coffee-related products and accessories. The Company claims that as of March 31, 2022, it had 572 shops in operation in 12 U.S. states, of which 310 were company-operated and 262 were franchised.

3.      On March 1, 2022, two-thirds of the way through the Company's first quarter of 2022, Dutch Bros held a conference call to discuss its fourth quarter and full year 2021 results. On the call, Defendants made numerous statements reassuring investors that the Company's first quarter 2022 results would be positive, and in particular that the Company's margins were healthy. For example, Defendant Jonathan "Joth" Ricci ("Ricci"), the Company's Chief Executive Officer ("CEO") stated that, while Dutch Bros is "not immune to margin pressures," the Company was

"managing it appropriately" and that "we are feeling good as we enter '22 with the trajectory of our margins, given everything going on." Defendant Charles L. Jemley ("Jemley"), the Company's Chief Financial Officer ("CFO") similarly stated "we're just not feeling compression in margins."

4.      However, on May 11, 2022, after the market closed, the Company issued a press release announcing poor financial results for the first quarter of 2022. Therein, the Company reported a net loss of $16.3 million, compared to a net loss of $4.8 million for the first quarter of 2021. The Company also reported an adjusted net loss of $2.5 million (a loss of $0.02 per share), which fell below the Street's estimated earnings of $0.01 per share.

5.      The same day, the Company held a conference call to discuss the Company's first quarter 2022 results. To explain the Company's poor performance, Defendant Ricci pointed to Dutch Bros' margins, stating:

> [M]argin pressure on our company shops led to a lower adjusted EBITDA result than we expected. That margin pressure was primarily a result of these factors: our decision to be disciplined on the price we took, which we believe is less than half as much as many of our peers; faster inflation and cost of goods, especially in dairy; the pull forward of deferred expenses related to the maintenance of shops; and normal new store inefficiency amplified by the volume of new and ramping units in quarter 1.

Defendant Ricci further explained: "we did not perceive the speed and magnitude of cost escalation within the quarter. Dairy, for example, which makes up 28% of our commodity basket, rose almost 25% in Q1."

6.      On this news, Dutch Bros' share price fell $9.26, or 26.9%, to close at $25.11 per share on May 12, 2022, thereby injuring investors.

7.      During the Class Period, Defendants made materially false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was

experiencing increased costs and expenses, including on dairy; (2) that, as a result, the Company was experiencing increased margin pressure and decreased profitability in the first quarter of 2022; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

11.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.      Plaintiff Jerry Peacock, as set forth in the accompanying certification, incorporated by reference herein, purchased Dutch Bros securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Dutch Bros is incorporated under the laws of Delaware with its principal executive offices located in Grants Pass, Oregon. Dutch Bros' class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "BROS."

14.     Defendant Jonathan Ricci was the Company's President and Chief Executive Officer at all relevant times.

15.     Defendant Charles L. Jemley was the Company's Chief Financial Officer at all relevant times.

16.     Defendants Ricci and Jemley (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on March 1, 2022.[1] On that day, the Company held a conference call discussing its fourth quarter 2021 results (the "March conference call"). On the call, with respect to the Company's margins, Defendant Ricci stated:

> Our confidence in our people pipeline and development team allowed us to accelerate openings ahead of plan, allowing the shops to sooner contribute to profitability in 2022. While *we are not immune to margin pressures, but are managing it appropriately*, we continue to look for operational improvements and further opportunities in our market based pricing model.

18.     During the March conference call, an analyst asked whether the Company would raise prices to offset any potential margin pressure: "[a]re you contemplating adding more pricing to address some of the cost pressures in the business this year?" Defendant Ricci responded:

> So we look typically in a normal time frame. We're going to look at our pricing windows every 6 months, right, in the fall before holiday, in the spring before summer. *And so we're very mindful of that. I think we've been fortunate to not have a lot of inflation drag, both in '21 and frankly, moving into early '22. And so we haven't felt compelled*. . . . *But we are feeling good as we enter '22 with the trajectory of our margins, given everything going on.*

19.     During the same call, an analyst asked for more color on the Company's margins for 2022: "what [do] you think, well, COGS and labor inflation might be in '22[?] And therefore, if you can give any kind of directional color . . . what guidance might be for the first quarter of the full year '22 on that restaurant operating margin line?" Defendant Jemley responded:

> Yes, so we're fortunate that the two big costs, cost of goods and labor, *we don't have any real significant upward momentum in the labor line.* So we're starting halfway better than everybody else to begin with. And then secondly, *we have a pretty simple pantry of goods*. What we're really dealing with right now is freight and logistics costs going up. But we're able to do as we've shown in Q4, and the walk I gave you in COGS, we are really able to handle that pretty effectively. And

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

we'll get a full quarter of the price impact from November in our Q1. In terms of guiding a specific margin for Q1, I'd prefer not to do that. It is a – Q4 is the lowest seasonality, Q1 is the next lowest seasonality. And then we kind of get into Q2. But *I just think from other than the discount rollover from a year-over-year perspective, we're just not feeling compression in margins*. And the biggest thing for us is our labor costs are stable.

20.    During the March conference call, an analyst asked for context regarding Dutch Bros' guidance, given that the Company was already two-thirds of the way through the quarter: "does guidance embed some level of conservatism for the quarter? Or . . . just 2/3 of the way through the first quarter, that January maybe was a little bit more soft due to Omicron before rebounding in February? Just looking to better contextualize the guidance for 1Q." In response, Defendant Jemley stated:

Yes. *It was softer in January. It was better in February, less outages*. We're sitting ahead of the mid-singles right now. We're -- like everybody, don't know where the world is going to go over the next 30 days with all that's going on. And so we're just being a little tepid about how we look at things. *It doesn't really move the needle much.* The biggest revenue driver is annualization of new stores and new stores getting added. So it gets a lot of talk track and it is important to the underlying health of the business, but it's really not that financially meaningful right now as fast as we're growing the top line. That's why we don't – we try not to overthink it.

21.    The above statements identified in ¶¶ 17-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company was experiencing increased costs and expenses, including on dairy; (2) that, as a result, the Company was experiencing increased margin pressure and decreased profitability in the first quarter of 2022; and (3) that, as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

22.     On May 11, 2022, after the market closed, the Company issued a press release announcing its financial results for the first quarter of 2022. Therein, the Company reported a net loss of $16.3 million, compared to a net loss of $4.8 million for the first quarter of 2021. The Company also reported an adjusted net loss of $2.5 million (a loss of $0.02 per share), which fell below the Street's estimated earnings of $0.01 per share. In greater part, the Company stated:

> Joth Ricci, Chief Executive Officer and President of Dutch Bros Inc., stated, "The consumer demand for our beverages remains strong. Our substantial top-line revenue growth of 54% was primarily driven by the 107 company-operated shops opened over the past twelve months, a 56% increase, including 34 during the first quarter, and same shop sales of 6.0%. As a people-led growth story, we are particularly encouraged by our staffing levels and the performance of our newest shops, spread across many markets, including some that generated record initial sales. Our ability to increase revenues while successfully developing new shops reinforces our commitment to offering exceptional drive-thru experiences and confidence in our long-term strategy and growth targets."
>
> He added, "***Still, we were not immune to the record inflation that surpassed our expectations and pressured margins in our company-operated shops. While we believe these margin impacts may be short-term, we have opted to take a more conservative stance regarding adjusted EBITDA for 2022 as we monitor our pricing and the escalating cost environment.***"
>
> \*       \*       \*
>
> **First Quarter 2022 Highlights:**
>
> - **Opened** 34 new shops, our second-highest quarterly opening count on record. All shops opened in the quarter were company-operated shops.
>
> - **Total revenues** grew 54.0% to $152.2 million as compared to $98.8 million in the same period of 2021.
>
> - **Company-operated shop revenues** increased 67.1% to $130.2 million as compared to $77.9 million in the same period of 2021.
>
> - **System same shop sales grew** 6.0% in the first quarter and 11.1% vs. 2019. Company-operated same shop sales grew 5.1% in the first quarter, reflecting higher traffic and check, partially offset by intentional sales transfer, and 9.9% vs. 2019.

- **Company-operated shop gross profit** was $16.6 million as compared to $17.6 million in the same period of 2021.

- **Company-operated shop contribution**, a non-GAAP financial measure, grew 14.1% to $23.8 million as compared to $20.8 million in the same period of 2021.

- **Net loss** was $(16.3) million as compared to $(4.8) million in the same period of 2021. For the first quarter of 2022, we recognized $9.9 million of non-cash equity-based compensation.

- **Adjusted EBITDA**, a non-GAAP financial measure, was $9.7 million as compared to $18.7 million in the same period of 2021. Rapid escalations in dairy costs well above historic levels drove increases in our cost of sales. Costs related to more rapid new unit growth, escalating minimum wage in select mature markets, and other factors drove increases in labor costs. The timing of certain maintenance and travel costs also contributed to increased operating and other costs.

- **Adjusted net income (loss)**, a non-GAAP financial measure, was $(2.5) million as compared to $12.3 million in the same period of 2021.

- **Net loss per share of Class A and Class D common stock - diluted was $(0.10) and Adjusted net loss per fully exchanged share of common stock**, a non-GAAP financial measure, was $(0.02).

(Footnotes omitted).

23.     On the same day, May 11, 2022, after the market closed, the Company held a conference call to discuss its first quarter 2022 results (the "May conference call"). On the call, Defendant Ricci revealed that multiple factors compressed Dutch Bros' margins during the first quarter, including dairy costs, which resulted in the Company's expanded net loss:

> While we are pleased with the strength of our revenue and shop development in the first quarter, margin pressure on our company shops led to a lower adjusted EBITDA result than we expected. ***That margin pressure was primarily a result of these factors: our decision to be disciplined on the price we took, which we believe is less than half as much as many of our peers; faster inflation and cost of goods, especially in dairy; the pull forward of deferred expenses related to the maintenance of shops; and normal new store inefficiency amplified by the volume of new and ramping units in quarter 1.***

Everything we do inside the company is focused on making the business better and stronger 3, 5 and 10 years from today. ***Unfortunately, in this past quarter, a confluence of cost pressures overwhelmed our decisions around price and resulted in near-term margin compression***. We anticipated higher expenditures. However, we did not perceive the speed and magnitude of cost escalation within the quarter.

***Dairy, for example, which makes up 28% of our commodity basket, rose almost 25% in Q1. While costs rose throughout the quarter, we experienced a change in sales trajectory from mid-March onward as macroeconomic headwinds accelerated and comps turned negative.*** We are monitoring these factors and have chosen to take a more conservative stance on our 2022 outlook given macroeconomic uncertainty.

We opened 54 company shops in a condensed time ***frame from December through March***. Therefore, ***we experienced margin pressure from an accelerating pace of new unit openings both in terms of elevated preopening spend and normal new shopping efficiency.*** Given the pace of openings and the speed by which the business is transforming, a degree of variability within our results may often be the case over time.

. . .

As I mentioned before, quarterly adjusted EBITDA was $9.7 million, ***impacted largely by our decisions on pricing, dairy costs, labor costs, our decision to invest in preventative maintenance and the impact of accelerated new shop development***.

24.     During the same May conference call, Defendant Jemley reiterated and expanded

on Defendant Ricci's revelations:

However, as Q1 unfolded, we experienced 3 significant rapid cost escalations that, on an individual basis, would not have caused distress, but when taken collectively, did overwhelm our P&L: faster input cost inflation, ***especially in dairy and also labor cost increases***; the pull forward of expenses related to the ongoing care and condition of shops; and new and normal new store inefficiency amplified by the sheer volume of new and ramping units in quarter 1.

In the first quarter, we encountered 480 basis points of cost pressure from those higher ingredient costs relative to the prior year. As Joth noted, ***dairy increased by almost 25% towards the end of the first quarter*** to near historic highs in what is now 28% of our ingredients cost basket. We did not anticipate this sharp rise. ***While we do not believe dairy will stay this high indefinitely, we have to assume it will remain high for most of 2022.***

**Additionally, we encountered 240 basis points of cost pressure on our labor line.** This includes higher training costs, higher overtime to keep stores open, and higher legislated minimum wage advances in California, Arizona and Washington states. We continue to see stability in our workforce despite a slight uptick in turnover in the first quarter. The good news is that our stores are staffed and operating at full hours. The combination of margin pressure from ingredient costs and higher labor costs resulted in margin compression of 720 basis points prior to offsets we achieved through menu price increases.

\*       \*       \*

**Inflation in both ingredient and operating costs has risen rapidly,** catching us off guard from the speed and the sharpness of this rise. In the short term, it is unlikely that our new menu price actions will fully offset the extent of these input cost increases.

25.     Then, during the question-and-answer portion of the May conference call, Defendant Ricci stated that Defendants planned to improve the Company's dairy purchasing and labor management practice to decrease costs:

So I think on the commodity costs, in the place that we're at right now, to see short-term effective improvement is limited in how we buy and kind of where we're at. We're out long on coffee. Dairy, obviously, you don't have a lot of control over. And then really, we're kind of beholden to some freight impacts and some other small basket of goods because we just don't have that much in our basket. It just so happens that dairy makes up such a large percentage of that basket.

Previously, we have been talking coffee a lot and had said it makes up just a small percentage. We're OK on coffee, which continues to be the case. **But dairy certainly caught us off guard. I do think we have some opportunity to improve internally on our purchasing and our purchasing capabilities and how we look at that long term. And as we grow, that is an area of emphasis for Charlie and myself, as we kind of, I'd say, build that muscle here at Dutch Bros**.

Two is related to how we manage shops. And I will tell you that our retail shops team is looking hard right now at labor. **I think we all need to be looking at labor, and we all need to be thinking about how we manage labor, especially related to overtime and things of that nature and may be related to some daypart flexibility**. Just because of the nature of the business is changing a little bit and the nature of the market is changing a little bit, we need to be flexible on how we do that.

26.     On this news, Dutch Bros' share price fell $9.26, or 26.9%, to close at $25.11 per share on May 12, 2022, thereby injuring investors.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Dutch Bros securities between March 1, 2022 and May 11, 2022, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Dutch Bros' shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Dutch Bros shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Dutch Bros or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Dutch Bros; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

33.     The market for Dutch Bros' securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose material adverse facts, Dutch Bros' securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Dutch Bros' securities relying upon the integrity of the market price of the Company's securities and market information relating to Dutch Bros, and have been damaged thereby.

34.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Dutch Bros' securities, by publicly issuing false and/or misleading statements

and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Dutch Bros' business, operations, and prospects as alleged herein.

35.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Dutch Bros' financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

36.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

37.     During the Class Period, Plaintiff and the Class purchased Dutch Bros' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

38.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Dutch Bros, their control over, and/or receipt and/or modification of Dutch Bros' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Dutch Bros, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

39.     The market for Dutch Bros' securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Dutch Bros' securities traded at artificially inflated prices during the Class Period. On March 29, 2022, the Company's share price closed at a Class Period high of $62.77 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Dutch Bros' securities and market information relating to Dutch Bros, and have been damaged thereby.

40.     During the Class Period, the artificial inflation of Dutch Bros' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about Dutch Bros' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Dutch Bros and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

41.     At all relevant times, the market for Dutch Bros' securities was an efficient market for the following reasons, among others:

(a)     Dutch Bros shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Dutch Bros filed periodic public reports with the SEC and/or the NYSE;

(c)     Dutch Bros regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Dutch Bros was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

42.     As a result of the foregoing, the market for Dutch Bros' securities promptly digested current information regarding Dutch Bros from all publicly available sources and

reflected such information in Dutch Bros' share price. Under these circumstances, all purchasers of Dutch Bros' securities during the Class Period suffered similar injury through their purchase of Dutch Bros' securities at artificially inflated prices and a presumption of reliance applies.

43.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

44.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker

had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Dutch Bros who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

45.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

46.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Dutch Bros' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

47.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Dutch Bros' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Dutch Bros' financial well-being and prospects, as specified herein.

49.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Dutch Bros' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Dutch Bros and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

50.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

51.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Dutch Bros' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Dutch Bros' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Dutch Bros' securities during the Class Period at artificially high prices and were damaged thereby.

53.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that

Dutch Bros was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Dutch Bros securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

54.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

56.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57.     Individual Defendants acted as controlling persons of Dutch Bros within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

59.     As set forth above, Dutch Bros and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 1, 2023                    **GLANCY PRONGAY & MURRAY LLP**

By:   */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Ani Setian
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: clinehan@glancylaw.com
Email: asetian@glancylaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Counsel for Plaintiff*

# CERTIFICATION PURSUANT
# TO FEDERAL SECURITIES LAWS

1.      I, Jerry Peacock, make this declaration pursuant to Section 27(a)(2) of the Securities

Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934

("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Dutch Bros Inc. ("Dutch Bros" or the

"Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Dutch Bros securities at the direction of plaintiffs' counsel

or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired Dutch Bros securities during the Class Period, including providing

testimony at deposition and trial, if necessary. I understand that the Court has the authority to

select the most adequate lead plaintiff in this action.

5.      To the best of my knowledge, the attached sheet lists all of my transactions in Dutch

Bros securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is

signed, I have not served or sought to serve as a representative party on behalf of a class under the

federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of

the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such

reasonable costs and expenses directly relating to the representation of the class as ordered or

approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed _2/22/23_____
                    **(Date)**

_____   _____
                    **(Signature)**

_____
                    Jerry Peacock

                    **(Type or Print Name)**

DocuSign Envelope ID: 192C4A13-015A-4838-A6E6-463C248CBBBF

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|------|------------------|------------------|-----------------|
| 05/09/2022 | Purchase | 2251 | $43.08 |
| 05/16/2022 | Sale | 2251 | $26.80 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |