**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JERRY PEACOCK, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:23-cv-01794-PAE |
| Plaintiff, | |
| v. | |
| DUTCH BROS INC., JONATHAN RICCI, and CHARLES L. JEMLEY, | |
| Defendants. | |

**LEAD PLAINTIFF MOVANT TYLER SCHEINOST'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

Lead Plaintiff Movant Tyler Scheinost ("Scheinost") submits this memorandum of law in support of his motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 16), and in opposition to the competing motion for appointment as lead plaintiff and approval of lead counsel filed by Douglas Rein ("Rein") (Dkt. No. 12).

## I.    INTRODUCTION

Only Scheinost and Rein are still seeking appointment as lead plaintiff. While Michael Rice ("Rice") initially filed a motion (Dkt. No. 19), he effectively abandoned his motion by filing a notice on May 22, 2023, informing the Court that he does not oppose the competing motions because he "has not asserted the 'largest financial interest.'" *See* Dkt. No. 23; *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 443 (S.D.N.Y. 2013) (movants "did not file opposition briefs, and thus the Court deems their applications abandoned").

With respect to the lead plaintiff determination, the question presently before the Court is which of these two movants is the "most adequate plaintiff"—*i.e.*, the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The Private Securities Litigation Reform Act of 1995 ("PSLRA") directs courts to appoint the "most adequate plaintiff" as lead plaintiff and provides a rebuttable presumption that the most adequate plaintiff is the movant that, *inter alia*, has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted, however, by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, of the remaining movants, Scheinost has the largest financial interest in the relief sought by the class and satisfies the requirements of Rule 23. As such, Scheinost is the presumptively "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Since Scheinost is the presumptively most adequate plaintiff, and the presumption cannot

be rebutted, Scheinost should be appointed as lead plaintiff, and his selection of counsel should be approved.[1]

## II.    SCHEINOST IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF BECAUSE HE HAS THE LARGEST FINANCIAL INTEREST

Scheinost satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, Scheinost filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 16; 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). Second, Scheinost satisfies the requirements of Rule 23, as demonstrated in his memorandum of law in support of his lead plaintiff motion. *See* Dkt. No. 17 at 6-8; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Finally, as explained *infra*, Scheinost has the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### A.    Courts Use the Four *Lax* Factors to Compare Movants' Financial Interests

"The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has articulated such a method." *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008). However, "many courts, including courts in this District . . . have adopted a four-factor [*Lax*] test" which considers: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Id.* at 437. Courts place the most emphasis on the last factor. *Id.*

Most courts agree that the preferred method to calculate financial losses requires Class Period sales to be matched to purchases on a last-in-first-out ("LIFO") basis. *See In re eSpeed, Inc.*

---

[1] "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

*Sec. Litig.*, 232 F.R.D. 95, 100-102 (S.D.N.Y. 2005). *eSpeed* describes the LIFO loss calculation method:

> [The LIFO] method matches the last purchases made during the class period with the first sales made during the class period. Subtracting the sales from the purchases, the Adib Group arrives at its base class period losses. Then, shares that were bought during the class period but were not sold during the class period are accounted for as if they had been sold at the average price of the shares in the 90 calendar days following the class period. Adding the losses incurred during the class period to the unrealized losses that would have been incurred had the Adib Group sold their remaining stock at the average price immediately following the class period, the Adib Group arrives at its final calculation.

*Id.* at 102 (footnotes omitted). LIFO is the preferred accounting method because it "has been used not only for lead plaintiff calculations, but also to determine compensation amounts for stockholders suffering losses due to securities fraud." *Id.* at 101.

### B.   Scheinost Has the Largest Financial Interest

Here, Scheinost has a larger financial interest than Rein, the only other remaining movant, as measured by every *Lax* factor:[2]

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | LIFO Loss |
|---|---|---|---|---|
| Tyler Scheinost | 10,000 | 5,400 | $306,802.00 | $114,968.33 |
| Douglas Rein | 9,000 | 2,000 | $64,685.00 | $102,011.20 |

Notably, Rein has much smaller net shares purchased and net expenditure figures compared to Scheinost because Rein sold 7,000 shares during the Class Period on March 29, 2022, for a large gain. *See* Dkt. No. 14-2. Prior to this sale Rein had only purchased 2,000 shares during the Class Period. As such, his sale caused his Class Period share count to go negative by 5,000 shares. Rein subsequently purchased more shares during the Class Period. However, his massive Class Period

---

[2] The data in the chart is taken from the movants' respective loss charts. *See* Dkt. Nos. 14-2, 18-3).

gain on his sale of 7,000 shares caused his net shares purchased and net expenditure figures to be much smaller than Scheinost's.

**C.      The Court Should Reject Any Belated Attempts by Rein to Alter the Loss Calculation to Game the Financial Interest Analysis**

Any attempt by Rein to alter the loss calculation method in his opposition to gain an advantage should be rejected. *See Cook v. Allergn PLC*, No. 18-cv-12089, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (denying the motion of movant who "used the same methodology as [a competing movant] in its original moving papers - only to alter its calculation when it learned that someone else had a larger loss"); *Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, at *3 (N.D. Ill. June 26, 2018) ("[C]ourts have rejected proposals to alter a proposed loss calculation method made after it was apparent that the proponent of the change would not have the largest financial interest under the initially proposed method.") (collecting cases).

For instance, it is possible that Rein will argue that some courts have endorsed a modification to the LIFO loss calculation that excludes movants' losses (or gains) on shares that were purchased and then sold during the class period before a corrective disclosure. On this basis Rein might argue that Scheinost's sale of 4,600 shares (of his 10,000 shares) on the last day of the Class Period, shortly before the market closed, should be excluded from Scheinost's loss calculation. This argument should be rejected for a few reasons.

First, Rein endorsed the traditional LIFO calculation in his initial motion papers, matching his Class Period sales to his Class Period purchases. *See* Dkt. No. 14-2 n. ** ("Mr. Rein's 3/29/2022 sale of 7,000 shares for $63.88/share matches on a 'Last-In, First-Out' ('LIFO') basis with Class Period purchases totalling [sic] 2,000 shares on 3/25/2022 . . . ."); *see also eSpeed*, 232 F.R.D. 95, 102 (the LIFO method "matches the last purchases made during the class period with the first sales made during the class period" and [s]ubtract[s] the sales from the purchases" to

4

"arrive[] at [the] base class period losses"). As such, Rein should not be permitted to change methods in his opposition brief.

Second, Dutch Bros' stock price fell substantially on high volume on May 11, 2022, which caused Scheinost's loss on shares he sold that day and indicates that the corrective disclosure released after market hours on May 11, 2022 may have leaked prior to market close. Dutch Bros' stock price opened at $40.00 per share on May 11, 2022, but closed at just $34.37 per share, a decline of $5.63 per share, or 14%.[3] The trading volume on May 11, 2022 was 7,713,100 shares, compared to the Class Period daily average of just 1,980,647 shares. *Id.* Scheinost sold some of his shares near the market close for $34.63 and some for $34.71, causing a substantial loss. *See* Dkt. No. 18-3.

Given the price movement and volume, it is possible that further fact investigation, including discovery, will yield evidence that the information Dutch Bros disclosed after market close on May 11, 2022 leaked into the market prior to Scheinost's sale near market close, which would eliminate any argument that the corrective information did not cause Scheinost's loss. While some courts have taken clear cut loss causation issues into account when calculating movants' losses, disputed loss causation issues like the one present here should not be adjudicated at the lead plaintiff appointment stage. *See Cook*, 2019 WL 1510894, at *2-*3 (rejecting movant's proposal to exclude all "in and out transactions" from the loss calculation in part because "[g]iven . . . the documented decline in Allergan's share price during [the class period] (at points dramatically), it would be unwise to embrace" such a method); *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20-cv-5865, 2020 WL 7698321, at *3 (S.D.N.Y. Dec. 28, 2020) (declining to "exclude . . . in-

---

[3] Historical volume and pricing data available at: https://finance.yahoo.com/quote/BROS/history (last visited May 22, 2023).

5

and-out trades prior to April 3, 2020" even though "the complaint alleges multiple partial disclosures, beginning on April 3, 2020" because the allegations were "insufficient to establish the date of UCO's first corrective disclosure").

Finally, as illustrated above, Scheinost has a much larger financial interest than Rein under the first three *Lax* factors: gross shares purchased, net shares purchased, and net expenditure. As such, even if Rein had a larger loss than Scheinost, the balance of the factors weighs in favor of a finding that Scheinost has the largest financial interest. *See Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, No. 06-cv-5797, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (appointing the movant that prevailed on the first three factors, but not loss); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 17-cv-1958, 2017 WL 6028213, at *3 (N.D. Ohio Dec. 5, 2017) (same).

As such, the Court should reject any request by Rein in his opposition to alter the loss calculation. Moreover, regardless of the loss calculation method used, Scheinost has the largest financial interest when considering all the *Lax* factors.

*    *    *

Since Scheinost has the largest financial interest in the relief sought by the class, filed a timely motion, and satisfies the requirements of Rule 23, he is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

## III. THE PRESUMPTION THAT SCHEINOST IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN AND CANNOT BE REBUTTED

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Such proof requires more than mere "speculation."

6

*Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011). "[C]onclusory assertions of inadequacy are . . . insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the movant] would be uniquely subject." *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324–25 (S.D.N.Y. 2004); *see also Murphy v. JBS S.A.*, No. 17-cv-3084, 2017 WL 4480751, at \*5 (E.D.N.Y. Oct. 6, 2017) ("Conclusory assertions and mere speculation will not suffice.").

No such proof has been—or can be—presented that Scheinost would be inadequate or subject to unique defenses. In fact, Scheinost has been a practicing medical professional since August of 2000, and is well-equipped to represent the class.

As such, Scheinost should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

## IV.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Here, Scheinost selected Glancy Prongay & Murray LLP and Holzer & Holzer, LLC as co-lead counsel for the class. The firms filed the initial complaint in this action on behalf of Plaintiff Jerry Peacock and the class following an extensive investigation into the claims. The firms also have decades of experience litigating securities fraud class actions. *See* Dkt. Nos. 18-4, 18-5. As such, the firms are more than adequate to represent the class, and Scheinost's selection of counsel should be approved. *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) ("There is a strong presumption in favor

7

of approving a properly-selected lead plaintiff's decision as to counsel.").

## V.    CONCLUSION

For the foregoing reasons, Scheinost respectfully requests that the Court grant his motion

and enter an Order: (1) appointing Scheinost as lead plaintiff; (2) approving Scheinost's selection

of counsel; and (3) denying the competing motions.

Respectfully submitted,

DATED: May 22, 2023                      **GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**HOLZER & HOLZER, LLC**
Corey D. Holzer
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Counsel for Tyler Scheinost and Proposed Co-Lead Counsel for the Class*

8

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On May 22, 2023, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 22, 2023, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh