**KAHN SWICK & FOTI, LLC**
Kim E. Miller (NY-6996)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
E-Mail: kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
E-Mail: lewis.kahn@ksfcounsel.com

*Counsel for Lead Plaintiff Movant Douglas Rein*
*and Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JERRY PEACOCK, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> DUTCH BROS INC., JONATHAN RICCI, and CHARLES L. JEMLEY, <br><br> Defendants. | Case No. 1:23-cv-01794-JLC-PAE |

**MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTION FOR**
**APPOINTMENT AND IN FURTHER SUPPORT OF MOTION OF**
**DOUGLAS REIN FOR APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page:**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT .................................................................................................... 2

    A.  Mr. Rein is the Presumptive "Most Adequate Plaintiff" and the
        Court Should Appoint Him as Lead Plaintiff ........................................................ 2

        1.  Mr. Rein Possesses the "Largest Financial Interest" in the
            Relief Sought By the Class ................................................................ 3

        2.  Mr. Rein "Otherwise Satisfies" the Requirements of Rule 23 ...................... 6

            a)  Mr. Rein is Typical .............................................................. 6

            b)  Mr. Rein is Adequate ............................................................ 7

        3.  The Competing Movants Cannot Rebut the Presumption that
            Mr. Rein is the "Most Adequate Plaintiff" .......................................... 8

    B.  The Court Should Approve Mr. Rein's Choice of Counsel ................................... 10

III. CONCLUSION ................................................................................................. 10

i

## TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Bo Young Cha v. Kinross Gold Corp.*,
No. 12-cv-1203, 2012 U.S. Dist. LEXIS 79288 (S.D.N.Y. May 31, 2012) ................................ 5

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
No. 18-cv-3608, 2019 U.S. Dist. LEXIS 14860 (S.D.N.Y. Jan. 30, 2019) ................................ 8

*Clynes v. Hebron Tech. Co. (In re Hebron Tech. Co. Sec. Litig.)*,
No. 20-cv-4420, 2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. Sep. 16, 2020) ......................... 3, 6

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336, 125 S. Ct. 1627 (2005) ............................................................................. 2, 4, 5

*Ellenburg v. JA Solar Holdings Co.*,
262 F.R.D. 262 (S.D.N.Y. 2009) ............................................................................................... 9

*Faig v. Bioscrip, Inc.*,
No. 13-cv-06922, 2013 U.S. Dist. 178854 (S.D.N.Y. Dec. 19, 2013) ...................................... 7

*Gutman v. Sillerman*,
No. 15-cv-7192, 2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8, 2015) .............................. 5

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................................... 10

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-cv-1825, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ......................... 4, 5, 9

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ...................................................................................................... 7

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ................................................................................................. 8

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) ........................................................................................... 3

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................................. 4

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) .................................................................................... 5, 9

*Kniffin v. Micron Tech., Inc.*,
379 F. Supp. 3d 259 (S.D.N.Y. 2019) ....................................................................................... 6

*Lax v. First Merchants Acceptance Corp.*,
No. 97-cv-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) ............................... 3

*Micholle v. Ophthotech Corp.*,
No. 17-cv-0210, 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) .............................. 6

ii

*Moshell v. Sasol Limited,*
 No. 20-cv-1008, 2020 U.S. Dist. LEXIS 78106 (S.D.N.Y. May 4, 2020)................................. 8

*Plaut v. The Goldman Sachs Grp., Inc.,*
 No. 18-cv-12084, 2019 U.S. Dist. LEXIS 160255 (S.D.N.Y. Sep. 19, 2019) ........................ 5, 7

*Rodriguez v. Draftkings Inc.,*
 No. 21-cv-5739, 2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021) ................. 2, 4, 5, 7

*Salinger v. Sarepta Therapeutics, Inc.,*
 No. 19-cv-8122, 2019 U.S. Dist. LEXIS (S.D.N.Y. Dec. 17, 2019) ......................................... 7

*Sallustro v. Cannavest Corp.,*
 93 F. Supp. 3d 265 (S.D.N.Y. 2015) ...................................................................................... 5

*Sgalambo v. McKenzie,*
 268 F.R.D. 170 (S.D.N.Y. 2010).............................................................................................. 7

*Simco v. Aegean Marine Petroleum Network Inc.,*
 No. 18-cv-4993, 2018 U.S. Dist. LEXIS 241261 (S.D.N.Y. Oct. 30, 2018) ............................ 5

*Tan v. NIO Inc.,*
 No. 19-cv-1424, 2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020) ............................ 7, 8

*Weinberg v. Atlas Air Worldwide Holdings, Inc.,*
 216 F.R.D. 248 (S.D.N.Y. 2003)............................................................................................. 6

**Statutes**

15 U.S.C. §78u-4(a)(3) ....................................................................................................... passim

Presumptive Lead Plaintiff Douglas Rein ("Mr. Rein" or "Movant") respectfully submits this Memorandum of Law in opposition to the motion of Tyler Scheinost ("Mr. Scheinost") for appointment as lead plaintiff and approval of lead counsel (ECF No.16) and in further support of Mr. Rein's motion for appointment as Lead Plaintiff and approval of his selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for the Class. ECF No. 12.

## I.      INTRODUCTION

On May 1, 2023, pursuant to 15 U.S.C. §78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), three parties filed competing motions for appointment as lead plaintiff and approval of their respective choices of lead counsel in the above captioned matter: (1) Mr. Rein (ECF No. 12); Mr. Scheinost (ECF No. 16); and Michael Rice ("Mr. Rice") (ECF No. 19). On May 22, 2023, Mr. Rice filed a notice on non-opposition to competing motions for appointment of lead plaintiff (ECF No. 23); thus, only the motions of Mr. Rein and Mr. Scheinost remain.

The PSLRA clearly states that the Court shall appoint as lead plaintiff the movant who: (1) files the complaint or a timely motion for appointment as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23 ("Rule 23"). 15 U.S.C. §78u-4(a)(3)(B)(i), (iii).

As demonstrated by the chart below, Mr. Rein possesses the largest financial interest in the relief sought of the remaining movants:

| | Asserted Loss: | Actual LIFO/*Dura* Loss: | Total Shares Purchased: | Net Shares Purchased: | Net Funds Expended: |
|---|---|---|---|---|---|
| **Mr. Rein:** | $(102,011.20) | $(102,011.20) | 9,000 | 7,000 | $(384,084.80) |
| **Mr. Scheinost:** | $(114,968.33) | $(59,968.08) | 10,000 | 5,400 | $(306,802.00) |

While Mr. Scheinost *asserts* a loss of $(114,968.33), that figure erroneously includes $(55,000.00) in losses attributable to 'in-and-out' transactions which are not recoverable under the

Supreme Court's holding in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005). *See infra* at § II; Supplemental Declaration of Kim E. Miller ("Suppl. Miller Decl."), submitted contemporaneously herewith, at Exhibit A (Conformed Scheinost Loss Chart); *Rodriguez v. Draftkings Inc.*, No. 21-cv-5739, 2021 U.S. Dist. LEXIS 219489, at \*13 (S.D.N.Y. Nov. 12, 2021) (Engelmayer, J.). Thus, when Mr. Scheinost's non-*Dura* 'in-and-out' transactions are properly excluded, his loss on 5,400 retained shares totals just $(59,968.08), some ***$42,043.12 less*** than Mr. Rein's loss of ***$(102,011.20)***. Further, Mr. Rein purchased more shares on a net basis and expended greater net funds than Mr. Scheinost. Thus, Mr. Rein possesses the largest financial interest in the litigation.

Mr. Rein also filed a timely motion for appointment as lead plaintiff with supporting documentation and otherwise satisfies the adequacy and typicality requirements of Rule 23. Mr. Rein went above and beyond the minimal requirements of the PSLRA by providing a declaration in addition to his certification with further information about his qualifications to serve as Lead Plaintiff. Mr. Rein is a business executive with over 25 years of investing experience and is therefore well-suited to supervise Lead Counsel in this matter. *See* ECF No. 14-4 at ¶¶ 2-3. Mr. Rein is willing to serve as Lead Plaintiff, has selected competent counsel to represent himself and the Class, and no other movant can rebut the presumption that he is the most adequate plaintiff. As such, Mr. Rein's motion for appointment as Lead Plaintiff should be granted, his selection of KSF as Lead Counsel should be approved, and the competing motions should be denied.

## II.    ARGUMENT

### A.    Mr. Rein is the Presumptive "Most Adequate Plaintiff" and the Court Should Appoint Him as Lead Plaintiff

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the

largest financial interest need only make a *prima facie* showing at this stage that it satisfies the adequacy and typicality requirements of Rule 23. *See, e.g.*, *Clynes v. Hebron Tech. Co. (In re Hebron Tech. Co. Sec. Litig.)*, No. 20-cv-4420, 2020 U.S. Dist. LEXIS 169480, at \*12 (S.D.N.Y. Sep. 16, 2020) (Engelmayer, J.) ("When moving for appointment as lead plaintiff, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (internal quotations omitted). Once this presumption is triggered, it may be rebutted only upon proof that the presumptive lead plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). As set forth below: (1) Mr. Rein has the largest financial interest in the Action; (2) Mr. Rein has made a *prima facie* showing of adequacy and typicality under Rule 23; and (3) no competing movant can rebut the presumption that Mr. Rein will fairly represent the interests of the Class. Accordingly, Mr. Rein is the most adequate plaintiff and the Court should appoint him to represent the Class.

**1.      Mr. Rein Possesses the "Largest Financial Interest" in the Relief Sought By the Class**

While the PSLRA does not provide any guidance regarding the appropriate methodology for determining a plaintiff's "financial interest," courts within the Second Circuit and this District have typically considered the "*Lax-Olsten*" factors to determine which movant possesses the greatest financial interest: (1) the number of shares purchased during the class period; (2) the net number of shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period. *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, No. 97-cv-2715, 1997 U.S. Dist. LEXIS 11866, at \*18 (N.D. Ill. Aug. 11, 1997)). Nevertheless, most courts within this Circuit also recognize that fourth factor—the approximate financial loss—is the most significant factor to be considered. *See, e.g.*, *Kaplan v. Gelfond*, 240

3

F.R.D. 88, 93 (S.D.N.Y. 2007) ("Although courts have differed on how much weight to assign to each of the Lax factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *Draftkings Inc.*, 2021 U.S. Dist. LEXIS 219489, at *11 (collecting cases).

The loss chart submitted with Mr. Scheinost's motion obfuscates his recoverable loss, erroneously claiming a loss of $(114,968.33). *See* ECF No. 18-3. But that figure includes $(55,000.00) in losses attributable to 'in-and-out' sales of 4,600 shares which are not recoverable under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627 (2005). *See* Suppl. Miller Decl. at Ex. A. While Mr. Scheinost purchased 10,000 shares of Dutch Bros common stock during the Class Period on May 4, 2022, he then sold 4,600 of those shares *during the Class Period* on May 11, 2022. The *Peacock* Complaint (which was filed on behalf of Plaintiff Jerry Peacock by Mr. Scheinost's counsel, Glancy Prongay & Murray LLP ("Glancy")), alleges Defendants' fraud was first revealed to the market upon the issuance of Dutch Bros' 1Q22 Earnings Release "on May 11, 2022, *after the market closed*…." ¶¶ 4, 22 (emphasis added). The Class Period is therefore defined to include all "persons and entities that purchased or otherwise acquired Dutch Bros securities between March 1, 2022, *and May 11, 2022, inclusive*…." ¶ 1 (emphasis added). Mr. Scheinost's erroneous loss chart implicitly recognizes that the corrective disclosure was not revealed to the market until May 12, 2022: "The 90-Day Average Price used in this loss chart is the average closing price between May 12, 2022 and August 9, 2022." ECF No. 18-3.

As courts within this Circuit have routinely held, losses on securities that were not held at the time of a corrective disclosure are excluded under the Supreme Court's holding in *Dura*, because "if…the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." 544 U.S. at 342; *see, e.g.*, *Draftkings*, 2021 U.S. Dist. LEXIS 219489, at *13-14 ("The problem with "in and out" transactions is that "[a]ny gain or loss due to [them] is reasonably read to reflect price fluctuations attributable to factors other than the fraud.") (quoting *Bo Young Cha v. Kinross Gold Corp.*, No. 12-cv-1203, 2012 U.S. Dist. LEXIS 79288, at *13 (S.D.N.Y. May 31, 2012) (Engelmayer, J.)); *Plaut v. The Goldman Sachs Grp., Inc.*, No. 18-cv-12084, 2019 U.S. Dist. LEXIS 160255, at *13 (S.D.N.Y. Sep. 19, 2019) ("[U]nder *Dura*, I am inclined to exclude in-and-out transactions prior to the first alleged corrective disclosure, i.e., those "losses that [each movant] may have incurred before [Defendants'] misconduct was ever disclosed to the public.") (quoting *In re Comverse*, 2007 U.S. Dist. LEXIS 14878, at *13); *In re Comverse*, 2007 U.S. Dist. LEXIS 14878, at *18 (holding that *Dura* and its progeny "require a court to make pre-discovery loss causation determinations regarding asserted claims (or parts of asserted claims) that are based on the facts alleged in the complaint"); *Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 275 (S.D.N.Y. 2015) (holding that "transactions that took place prior to [the first corrective disclosure], will not be considered in calculating recoverable loss or in determining lead plaintiff status").[1]

---

[1] *See also Simco v. Aegean Marine Petroleum Network Inc.*, No. 18-cv-4993, 2018 U.S. Dist. LEXIS 241261, at *9 (S.D.N.Y. Oct. 30, 2018) (citing *CannaVest* and confirming that "[l]osses resulting from shares sold prior to corrective disclosures are not considered in evaluating a movant's financial interests"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("[A]ny losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation."); *Gutman v. Sillerman*, No. 15-cv-7192, 2015 U.S. Dist. LEXIS 179553, at *13 (S.D.N.Y. Dec. 8, 2015) ("[W]hen evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider

Thus, when the losses attributable to Mr. Scheinost's 'in-and-out' transactions are properly excluded, Mr. Rein's loss of $(102,011.20) exceeds Mr. Scheinost's recoverable loss of $(59,968.08) by **$42,043.12**, or more than 70%. *See* infra at § I. In fact, Mr. Rein's loss even exceeds the losses of Mr. Scheinost and the only other movant, Mr. Ross, ***combined***. Finally, in addition to suffering the largest loss, Mr. Rein carries two of the remaining three *Lax-Olsten* factors: net shares purchased and net funds expended. *See* infra at § I. Accordingly, Mr. Rein possesses the largest financial interest in the relief sought by the Class.

### 2. Mr. Rein "Otherwise Satisfies" the Requirements of Rule 23

In addition to suffering the largest loss, Mr. Rein also satisfies the PSLRA's preliminary showing of typicality and adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Hebron Tech.*, 2020 U.S. Dist. LEXIS 169480, at *12 ("When moving for appointment as lead plaintiff, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met."). Indeed, "a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of litigation] and should be left for consideration of a motion for class certification." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (alteration in original). Here, Mr. Rein unquestionably satisfies both requirements.

### a) Mr. Rein is Typical

Mr. Rein is typical to the Class as a whole and not subject to any potentially disqualifying unique defenses. With respect to typicality, courts consider whether "'each class member's claim arises from the same course of events, and [whether] each class member makes similar legal

---

that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures."); *Micholle v. Ophthotech Corp.*, No. 17-cv-0210, 2018 U.S. Dist. LEXIS 41120, at *14 (S.D.N.Y. Mar. 13, 2018) ("Courts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff."); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019) ("[T]he recent trend in this district is for movants to adjust their LIFO calculations to remove any losses arising from securities that were bought and sold before a defendant's corrective disclosure.").

arguments to prove the defendant's liability.'" *Draftkings*, 2021 U.S. Dist. LEXIS 219489, at \*18 (quoting *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173-74 (S.D.N.Y. 2010)); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Additionally, Rule 23 does not require the lead plaintiff to be identically situated with all class members to satisfy the typicality requirement. *See Goldman Sachs*, 2019 U.S. Dist. LEXIS 160255, at \*7 (noting that "claims need not be identical"); *see also Faig v. Bioscrip, Inc.*, No. 13-cv-06922, 2013 U.S. Dist. 178854, at \*9 (S.D.N.Y. Dec. 19, 2013) (same).

As applied, Mr. Rein's claims are typical to the Class as a whole. Mr. Rein: (i) suffered losses on its investments in Dutch Bros securities; (ii) as a result of his reliance on Defendants' alleged misstatements and/or omissions; (iii) therefore, the claims of Mr. Rein are based on the same course of events as the claims of the Class; and (iv) as a result thereof, Mr. Rein's claims will rely upon the same legal theories as the Class as a whole. Therefore, Mr. Rein satisfies the typicality requirement. *See Tan v. NIO Inc.*, No. 19-cv-1424, 2020 U.S. Dist. LEXIS 36623, at \*16 (E.D.N.Y. Mar. 3, 2020) (noting that movant's "claims appear to be typical because, like all members of the class, he alleges that he purchased [company] stock during the class period and suffered losses after it was discovered that [company's] misleading statements artificially inflated the stock price during that period.") (quotation omitted).

b)    Mr. Rein is Adequate

Mr. Rein also satisfies the adequacy requirement of Rule 23. In analyzing a movant's adequacy, "a court must consider whether the proposed lead plaintiff: (1) maintains claims that conflict with those of the class; (2) has sufficient interest in the outcome of the case; and (3) has selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-cv-8122, 2019 U.S. Dist. LEXIS, at \*8 (S.D.N.Y. Dec. 17, 2019).

7

Here, Mr. Rein has no interests that are antagonistic to the class. Moreover, "given [his] significant losses," Mr. Rein is strongly motivated to vigorously act as an advocate and fiduciary on behalf of the Class and is well equipped to oversee counsel in this regard. *NIO*, 2020 U.S. Dist. LEXIS 36623, at \*16. Finally, Mr. Rein has further demonstrated his adequacy through the selection of KSF, a firm with decades of experience successfully litigating securities class actions, as proposed Lead Counsel for the Class. *See Moshell v. Sasol Limited*, No. 20-cv-1008, 2020 U.S. Dist. LEXIS 78106, at \*5 (S.D.N.Y. May 4, 2020) (finding adequacy requirement satisfied where movant selected "firm experienced in securities class action litigation").

Based on the foregoing, Mr. Rein, as the movant with the largest financial interest who also satisfies the typicality and adequacy requirements of Rule 23, is entitled to appointment as Lead Plaintiff.

### 3. The Competing Movants Cannot Rebut the Presumption that Mr. Rein is the "Most Adequate Plaintiff"

To overcome the presumption entitling Mr. Rein to appointment as Lead Plaintiff, the PSLRA requires the remaining Lead Plaintiff movants to present "proof" that he is inadequate to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012) (requiring "exacting proof…to rebut the PSLRA's presumption"). As no other movant has, or will be able to, submit the required "proof" that Mr. Rein fails on typicality or adequacy grounds, Mr. Rein is entitled to appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (evidentiary burden required to rebut presumption of most adequate plaintiff is "proof"); see *also City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-cv-3608, 2019 U.S. Dist. LEXIS 14860, at \*18 (S.D.N.Y. Jan. 30, 2019) (rejecting speculative arguments against presumptive lead plaintiff).

Nevertheless, Mr. Rein anticipates Mr. Scheinost may argue his Class Period sales somehow render him inadequate and/or atypical under Rule 23, despite the fact that Mr. Rein is neither a 'net seller' nor 'net gainer' and properly netted his gains on Class Period sales (which LIFO-match to both Class Period and pre-Class Period purchases) from his losses on retained Class Period purchases. Such an argument would constitute mere subterfuge. *See* ECF No. 14-2 (Rein Loss Chart); *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262, 266 (S.D.N.Y. 2009) ("The most accurate and realistic way to account for the gain realized from the [class period sale of pre-class period purchases] is to subtract the purchase price of the shares sold from the proceeds of their sale, and to offset the resulting gain against [the movant]'s class period losses."). Similarly, Mr. Rein anticipates Mr. Scheinost may argue his "net shares" are not 7,000, but rather 2,000, in consideration of Mr. Rein's March 29, 2022 sale of 7,000 shares. But the court in *Comverse* clarified that net shares is defined as "shares purchased *during **and** retained* at the end of the class period…." *In re Comverse*, 2007 U.S. Dist. LEXIS 14878, at *8 (emphasis added). Thus, because 5,000 of the 7,000-share sale LIFO-match with his *pre*-Class Period purchases, Mr. Rein purchased 9,000 shares *during* the Class Period *and retained* 7,000 of those same shares at the end of the Class Period.[2] These arguments notwithstanding, it is incontrovertible that Mr. Rein's approximate loss of $(102,011.20)—being the most significant of the *Lax-Olsten* factors—exceeds Mr. Scheinost's recoverable loss of $(59,968.08) by **$42,043.12**, or more than 70%.

As the unrebutted presumptive PSLRA Lead Plaintiff in this case, the plain language of the statute supports Mr. Rein's appointment and the denial of all competing motions. *See* 15 U.S.C. § 78u-4(a)(3)(B); *see also Alibaba*, 102 F. Supp. 3d at 536 ("So long as the plaintiff with the largest

---

[2] It is for this same reason that Mr. Rein's "net funds expended" is $(384,084.80) and not $(64,684.80)—$319,400.00 of the proceeds from his March 29, 2022 sale match to pre-Class Period purchases of 5,000 shares.

losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status….")
(quoting *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). For this reason alone, all competing
motions should be denied.

#### B. The Court Should Approve Mr. Rein's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to
the approval of the court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The court should interfere with the
lead plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. §
78u-4(a)(3)(B)(iii)(II)(aa).

Here, Mr. Rein has selected KSF as Lead Counsel for the Class. As its resume reflects,
KSF is highly experienced in the areas of securities litigation and class actions and has successfully
prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.
*See* ECF No. 14-5. Thus, the Court may be assured that by approving Mr. Rein's selection of
counsel, the members of the Class will receive the best legal representation available.

### III. CONCLUSION

For all of the foregoing reasons, Mr. Rein respectfully requests that this Court: (1) deny
Mr. Scheinost's motion; (2) appoint Mr. Rein to serve as Lead Plaintiff; (3) approve his selection
of KSF as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may
deem just and proper.

DATED: May 22, 2023                          Respectfully submitted,

                                             **KAHN SWICK & FOTI, LLC**


                                             */s/ Kim E. Miller*
                                             Kim E. Miller (NY-6996)
                                             250 Park Avenue, 7th Floor
                                             New York, NY 10177
                                             Telephone: (212) 696-3732
                                             Facsimile: (504) 455-1498
                                             E-Mail: kim.miller@ksfcounsel.com

10

-and-

Lewis S. Kahn
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
E-Mail: lewis.kahn@ksfcounsel.com

*Counsel for Lead Plaintiff Movant Douglas Rein*
*and Proposed Lead Counsel for the Class*


## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 22, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the e-mail addresses on the Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to non-CM/ECF participants.

*/s/ Kim E. Miller*
Kim E. Miller

11